Richard R. Barker
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Rebecca R. Perez
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:20-CR-00179-TOR-2 |
| Plaintiff, | |
| v. | SENTENCING MEMORANDUM |
| DANIEL AUGUSTINE SOLIS | |
| Defendant. | |

Plaintiff, United States of America, by and through Richard R. Barker,

Acting United States Attorney for the Eastern District of Washington, and

Alison L. Gregoire and Rebecca R. Perez, Assistant United States Attorneys,

submits the following sentencing memorandum:

**1. PSIR and Guideline Calculation**

The United States agrees with the guideline calculation contained in the

Draft Presentence Investigation Report, ECF 402. Specifically, the United States

agrees that the guideline calculation is as follows:

Base offense level: 32

United States Sentencing Memorandum - 1

Victim under twelve:  +4

Commission of a sex act: +4

Knowing distribution: +2

Offense involving an infant or toddler: +4

Use of a Computer: +2

Repeat and Dangerous Sex Offender Against Minors: +5

_____

Adjusted offense Level: 53

Due to the inability of the guidelines to account for all the aggravating special offense characteristics in Defendant's case, the base offense level is treated as a 43.

Combined with Defendant's Criminal History Category of III, the resulting guideline range is life in prison.  Defendant is facing between 15 and 30 years for Count 1, Conspiracy to Produce Child Pornography; and between 5 and 20 years for Count 2, Distribution of Child Pornography.

**2.  Sentencing Recommendation and Factors Under 18 U.S.C. § 3553(a)**

The United States is recommending a sentence of 50 years in prison, the statutory maximum in this case. The United States is also recommending a lifetime of supervised release to follow.

Restitution is mandatory pursuant to 18 U.S.C. §§ 2259 and 3663A. The Court should order that Defendant pay restitution in the full amount sought by the two-year-old victim (ordered joint and severally with codefendant Audree

United States Sentencing Memorandum - 2

Pederson).  To date, despite many inquiries, the government has not received any request for restitution from Minor 1 (or the guardian of the child) in this case. Should that change prior to sentencing, this Court will be notified promptly.

Restitution *has* been sought by the Crime Victim Compensation program for medical costs stemming from the sexual assault exam performed on Minor 1, in the amount of $615.04. This should be ordered joint and severally with codefendant Audree Pederson.

The assigned AUSAs have for years handled hundreds of serious felony cases, many involving murder, rape, human trafficking, serious domestic violence, shootings, child physical and sexual abuse, and child pornography. These cases have involved absolutely horrifying factual scenarios and heartbreaking interactions with victims. Despite the brutal nature of those cases, those AUSAs would classify only a very few of those defendants as evil. Almost all defendants have some level of mitigating or explanatory circumstances, which, even if embellished for the sake of courtroom proceedings, are likely somewhat based in truth and provide some insight into a defendant's actions. But, unfortunately, a very small number of defendants are simply evil. They have chosen to act for their own arrogance or depravity, and sadly seem to take pleasure in the pain and torture of others. Daniel Solis is one such defendant.

///

///

United States Sentencing Memorandum - 3

## A.    Facts

This Court is familiar with many of the facts of this case due to the pretrial motions and the portion of trial presented to the jury. The United States does not wish to belabor what has already been presented. But some facts were not presented in court due to the guilty plea on the second day of trial. And in light of the United States' recommendation for the statutory maximum, some aggravating facts are indeed worth repeating.

Beginning in late fall 2019, Defendant lived with co-defendant Audree Pederson and her child. He was an abusive, controlling, and manipulative boyfriend who introduced Audree to drugs and to child pornography. He monitored her actions through logging into her social media and various phone applications. Audree was scared of him, but did nothing to help herself out of the situation. Defendant eventually moved to Michigan, where he continued his pattern of manipulation. In an inexplicable effort to appease Defendant and keep their relationship alive, Audree agreed to create sexually explicit video peripherally involving her son, including of her masturbating while her son was in the video frame, posing naked with her son laying on top of her body, and having her son hold a sex toy while she masturbated.[1] She then sent those videos to Defendant.

---

[1] These videos were deleted from Audree's phone and also appeared to be deleted from Defendant's phones. A forensic examiner was able to capture thumbnails of stills of these videos located in Audree's phone. Three of these thumbnails depicting the different acts described have been copied to a thumbdrive which will be provided to the Court. After the sentencing hearing, the thumbdrive will be

One day in early February 2020, Defendant became enraged when he learned Audree informed her mother that Defendant had access to the family Verizon plan. For the next several hours, the messaging from Defendant to Audree was cruel and aggressive, even more so than the standard condescending language Defendant generally used. He threatened to report Audree to the police based on the previously-created videos unless she created further videos of her performing fellatio on her son. Defendant told her she would lose her child. To avoid that consequence, Audree did as Defendant demanded. Defendant repeatedly told her to create different angles and time lengths for the videos. Audree repeatedly performed the sex act, filmed it, and sent it to Defendant. Then, to further torture Audree, Defendant sent those videos to various co-workers and friends.

This brief summary barely scratches the surface of the evidence in this case. As was admitted and only partially presented at trial, the Defendant and Audree messaged nearly non-stop for weeks. That conversation truly reveals the "relationship" for what it was. Audree Pederson was weak, with non-existent self-esteem, willing to do whatever to appease Defendant simply for the sake of having

_____

retrieved and maintained by the United States. This thumbdrive also contains copies of the child pornography later produced by Audree and Defendant, further described in this sentencing memorandum. Multiple videos were produced of Audree performing fellatio on the 2 year old; only two are included in the thumbdrive. In light of the nature of the case and the sentencing being requested by the United States, the United States provides these images and videos so this Court can observe the nature of Defendant's conduct.

a boyfriend. Defendant was truly mean, controlling, and shockingly sexually aggressive towards Audree and others. Defendant sensed that he could have Audree do whatever he wanted--and he did.

But of course, being mean is not a crime. And neither is being a poor boyfriend. And if that is where it ended with Defendant, he would not be facing 50 years in prison and the United States would not be requesting that time. Defendant, though, took that cruelty and used it to manipulate someone far weaker than him into engaging in some of the most inexplicable and disgusting actions known to man. Day 1 of trial ended with reading on page 106 of Trial Exhibit 6, the Verizon text messages between Defendant and Audree which capture his threats to her and during which she created the videos of her and the victim. Prior to the conversation copied below, Defendant had already told Audree to "send me a couple of minor video of you sucking [victim's] dick if you cant then fine I'll literally send that video rn". The conversation continued for several pages as Audree tried to avoid the threat, but Defendant became more aggressive and counted down the time until

///

///

///

///

///

///

United States Sentencing Memorandum - 6

he would supposedly send the blackmail material to the police (Defendant

messages in blue and yellow, Audree messages in red and purple):

| 2/5/2020 1:27:00 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Well if u want to make me happy and keep me from sending the video I have to |
|---|---|---|---|
| 2/5/2020 1:27:03 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Please daniel |
| 2/5/2020 1:27:25 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | You don't have to do it daniel |
| 2/5/2020 1:27:34 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | 3 minutes |
| 2/5/2020 1:27:48 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Please, I'll do anything as long as it doesnt involve Keanu |
| 2/5/2020 1:28:12 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I'll do it. If you won't do this then ur useless to me anyways and I'm tired of ur fucking bullshit |
| 2/5/2020 1:28:56 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | What does me being forced to suck his going to do for you? |
| 2/5/2020 1:29:28 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | 1 minute |
| 2/5/2020 1:29:40 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I don't have to answer ur questions |
| 2/5/2020 1:30:03 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Please I'm begging dont make me do this? |
| 2/5/2020 1:30:29 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Times up you had ur chance |
| 2/5/2020 1:31:08 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | And now I have to do it cuz if I don't you're going to think I'm bluffing and I'm not going to give you that advantage |

| 2/5/2020 1:43:32 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Maybe I will |
|---|---|---|---|
| 2/5/2020 1:43:46 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Maybe I won't |
| 2/5/2020 1:44:29 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | But you know me well enough audree |
| 2/5/2020 1:45:08 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | And I really don't want to do it in the first place I just really want that video so I'm willing to put u in jail for it |
| 2/5/2020 1:46:24 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | If u do it for me and start to stop being such a bitch I promise I won't do anything audree |
| 2/5/2020 1:46:34 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | It's not necessary |
| 2/5/2020 1:46:55 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I got what I wanted and I don't want to ruin anyone's life |
| 2/5/2020 1:47:01 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | But I will for this video |
| 2/5/2020 1:48:03 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Especially since i don't care if u go to jail or not I honestly think you kinda deserve it anyways |
| 2/5/2020 1:48:43 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | It's fucked up to do but hey I won't feel so bad knowing that u were such a bitch anyways shouldn't have been so fucked yo to people |

After Audree had sent a video, Defendant continued to threaten and berate her:

| Time | From | To | Message |
|---|---|---|---|
| 2/5/2020 4:03:54 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I wont put my face in it. |
| 2/5/2020 4:04:04 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | No audree I been asking you to stop ur bullshit and u don't give a fuck |
| 2/5/2020 4:04:48 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Bitch then I'm sending the shit to gage we been through this how many times and u still being dumb af |
| 2/5/2020 4:04:52 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I have given up everything to you. You have won |
| 2/5/2020 4:05:19 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Naw bitch when u go to prison will be won I won |
| 2/5/2020 4:06:05 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Because when u go to prison it will be because your wanna be stupid |
| 2/5/2020 4:06:42 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | And when that day comes it's going to feel so good knowing ur dumbass is finally getting taken care of |
| 2/5/2020 4:07:20 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Do you want to keep talking being stupid pissing me off and waist my time or are you ready to do what I asked |
| 2/5/2020 4:07:35 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Cuz I could do this all night bitch |
| 2/5/2020 4:07:45 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | You will know when I've pissed me off enough |
| 2/5/2020 4:08:09 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | See how far u could push it audree |
| 2/5/2020 4:08:12 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I want this to be over |
| 2/5/2020 4:08:29 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Keep going let's see how this ends |
| 2/5/2020 4:08:58 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | One more video audree |
| 2/5/2020 4:09:05 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | That's all it takes |
| 2/5/2020 4:09:26 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Please hurry up |
| 2/5/2020 4:09:48 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | When my patience is gone ur gone |
| 2/5/2020 4:10:18 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | So keep dragging this shit out bitch n see how much patience I have |
| 2/5/2020 4:11:02 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | See if I really care about people like you |
| 2/5/2020 4:11:10 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | How nice am I |
| 2/5/2020 4:14:02 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I know you don't want to live everyday wondering if ur going to randomly be arrested |
| 2/5/2020 4:14:48 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Yea you're right |
| 2/5/2020 4:14:51 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Just send one more video audree so we can get all this bullshit u create over with already |
| 2/5/2020 4:15:11 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I really don't like you |

At one point while making the videos, Defendant told Audree she did not deserve to live:

| 2/5/2020 4:28:28 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Why do I have to show my face? |
|---|---|---|---|
| 2/5/2020 4:28:40 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Because ur a psycho bitch |
| 2/5/2020 4:29:10 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | You have to show ur face because you don't want to go to prison |
| 2/5/2020 4:29:31 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Audree I feel sorry for u |
| 2/5/2020 4:29:48 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | And I'm sorry |
| 2/5/2020 4:30:22 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | It must suck so bad |
| 2/5/2020 4:30:38 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | The pain you feel everyday |
| 2/5/2020 4:31:27 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Almost enough to end it |
| 2/5/2020 4:32:03 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | But still there is no excuse or justification for why you do what u do |
| 2/5/2020 4:32:29 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | People like you don't deserve to live anyways |
| 2/5/2020 4:32:59 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I agree |
| 2/5/2020 4:33:01 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I guess constant torture is fair |
| 2/5/2020 4:33:22 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | The pain u cause people audree |
| 2/5/2020 4:33:57 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | U don't deserve anything |
| 2/5/2020 4:35:01 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Ur either crazy or really really stupid like border line mental which is close to crazy |
| 2/5/2020 4:35:15 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Either way it must suck |

Audree's attempts to resist had no effect on Defendant:

| 2/5/2020 4:53:23 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | U really r just retarded af |
|---|---|---|---|
| 2/5/2020 4:53:50 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Your fucking brain doesn't work |
| 2/5/2020 4:54:24 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Why won't you just send the video |

| 2/5/2020 4:55:32 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Because I don't want to suck his dick again. I hate myself so much. |
| 2/5/2020 4:55:44 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I am |
| 2/5/2020 4:55:56 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Ur twisted |
| 2/5/2020 4:56:11 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | U have a sick sense of humor |
| 2/5/2020 4:56:35 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | None of this is funny to me |
| 2/5/2020 4:57:01 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Send the video audree right now don't do anything else just send the video it's 5 am I'm not waiting anymore |
| 2/5/2020 4:57:57 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I have to work at 630 so I'm leaving at 6 and going to have to start getting ready in a few and I'm not going to have time to sit here and play ur games |
| 2/5/2020 4:58:16 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Just send the video |
| 2/5/2020 4:58:39 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Daniel please don't make me do this. \nCan this please just be over? You have already won |
| 2/5/2020 4:59:40 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I'm a moron I know, i just want this to stop |
| 2/5/2020 5:01:28 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | This is the last you will get out of me I'm done- audree send the video or just wait and guess if I'll be getting arrested. I'm done talking to you |
| 2/5/2020 5:19:08 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Daniel come on, please |
| 2/5/2020 5:20:10 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | I'm thinking about it |
| 2/5/2020 5:20:25 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Stop this, you know this isnt right. \nI'm a bitch and a liar and a piece of shit and a horrible person but please dont put me in prison |
| 2/5/2020 5:20:35 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Please please please |
| 2/5/2020 5:21:00 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Ur putting urself in prison by not sending a dumb video |
| 2/5/2020 5:21:00 | 509-939-6995, Audree Pederson | 269-270-8697, Daniel Solis | You've already ruined me, why do you want me to suffer more |
| 2/5/2020 5:21:52 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | If I put my face in that video i might as well walk into jail anyways. |
| 2/5/2020 5:22:05 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | Why is it so important that my face is in it |
| 2/5/2020 5:24:11 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Risk your life for a video |
| 2/5/2020 5:24:52 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | U can literally say you've done that |

The full conversation surrounding these events is captured in trial Exhibit 6 and 7.

United States Sentencing Memorandum - 10

After these messages were sent and after Audree filmed and sent multiple videos of her performing fellatio on the 2-year-old victim, Defendant responded as follows:

| Date/Time | From | To | Message |
|---|---|---|---|
| 2/5/2020 7:16:07 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Everything is okay you just have to be able to see that |
| 2/5/2020 7:16:38 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Find it in you to know that everything is fine |
| 2/5/2020 7:16:40 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I see that but I am not ready to forgive you or myself |
| 2/5/2020 7:16:57 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Yes you are audree |
| 2/5/2020 7:17:17 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | If you don't want to then don't complain about it |
| 2/5/2020 7:17:37 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I dont want to |
| 2/5/2020 7:17:49 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Then fine |
| 2/5/2020 7:17:58 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Be miserable |
| 2/5/2020 7:18:04 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Have fun with that |
| 2/5/2020 7:21:19 | 509-939-6995; Audree Pederson | 269-270-8697; Daniel Solis | I'll be fine in a little bit but right now I am exhausted and just want to be left alone so I can calm down. This was too much |
| 2/5/2020 7:23:19 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | You will come to find that you didn't do anything wrong and that Keanu is fine and everything is okay no one is hurt injured or traumatized |
| 2/5/2020 7:24:03 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Everything is going be the same as always nothing happened |
| 2/5/2020 7:24:54 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | All that happened was you got some dick and Keanu got some head |
| 2/5/2020 7:25:03 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | It's not that big a deal |
| 2/5/2020 7:25:32 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Acting like millions of people died or something |
| 2/5/2020 7:26:07 | 269-270-8697; Daniel Solis | 509-939-6995; Audree Pederson | Everyone is happy and no one is hurt that is what is important |

After the creation of these videos, the two continued chatting for several days. The "relationship" continued as it had, with Defendant lecturing Audree and Audree accepting what Defendant said. At one point, though, he again became enraged at Audree. And so this time, rather than create another video, he logged into her account, using the name and password he used to monitor her activities, and send produced child pornography video to Audree's friends and co-workers.

United States Sentencing Memorandum - 11

**B.    Bank Robbery**

After Defendant engaged in this conduct, his life continued. He was apparently unaffected by having conspired to commit sexual acts on a child and by viewing videos of those acts and seemed to casually go about his business. He called law enforcement to report what had happened once he realized Audree was in jail, as described in the first day of trial, but was not arrested pending further investigation. After that conduct, Defendant decided to commit a bank robbery. He walked into a bank with a note demanding 50 thousand dollars:



He received about $7,000, and then went to a local strip club for several hours and ate chicken wings.

United States Sentencing Memorandum - 12

He was shortly arrested for the bank robbery, where he admitted the exact version of events. He claimed he was hoping to get some money to help children in a hospital, apparently forgetting that his first stop after the receipt of money was to see strippers rather than go to a charity.

Defendant then pled guilty to the bank robbery in federal court, as noted in paragraph 109 of the PSIR at ECF 402. He was sentenced to 30 months.

### C.    Insanity/Mental Illness/Drug Use

Defendant admitted to law enforcement, on multiple occasions, that he had committed the instant offense. But unlike in many cases, Defendant's description of the crimes to law enforcement was not an acknowledgement of his recognition that what he has done was bad. Rather, it was simply a statement of what had happened, with no remorse or regret. And when Defendant realized that producing child pornography would not lead to the relatively low 30-month sentence as the bank robbery had, he fought desperately to concoct a defense.

Throughout the pendency of this case, Defendant claimed an insanity defense, or in the alternative a diminished capacity defense, all stemming from purported methamphetamine use which led to voices in his head of the Illuminati telling him what to do. This Court correctly excluded the insanity defense based on the abundant case law that voluntary intoxication cannot support insanity.

But importantly here, not only was that defense properly excluded for legal reasons, it is not supported by the facts. Defendant's mental health excuses were

United States Sentencing Memorandum - 13

pulled out of thin air for trial. Defendant is a highly competent and relatively intelligent person. He is thoughtful and articulate, as evidenced by the hours of interview viewed during the first day of trial. Several experts were planning to testify during trial: First, Dr. Kenneth Muscatel, a forensic and clinical neuropsychologist. He was prepared to testify that based on thousands of pages of text messages, hours of viewing recorded interview, and hours of in-person interview, Defendant was not suffering the effects of hallucinations or a in any way lacking capacity to form the intent to produce child pornography. Dr. Muscatel was prepared to explain how the only evidence of any sort of mental incapacity was Defendant's claims years later—nothing at all close in time supported a mental incapacity.

Dr. Stacey Hail, a professor and physician in emergency medicine and toxicology would have testified that at all times surrounding the offenses, based on again on reading and listening and watching every recorded or written interaction possible in the days and weeks surrounding Defendant's crimes, that Defendant did not lack the capacity to commit the offenses. According to her analysis, there was some evidence of acute methamphetamine use and subsequent intoxication, but the text messages and other evidence demonstrated a degree of thoughtfulness, revenge, and awareness of consequences not consistent with chronic intoxication or psychosis. Additionally, Defendant's physical attributes did not remotely support chronic intoxication or psychosis.

United States Sentencing Memorandum - 14

During Defendant's plea colloquy during the 2020 Michigan bank robbery, the district court judge asked extensive and detailed questions about Defendant and his grandmother and his life. The defendant, prosecutor, defense attorney, and the judge did not make any mention of purported hallucinations or drug use to the degree that it affected him during court or any prior interaction.

Defendant was indeed a user of methamphetamine. He used small amounts when he lived with Audree. There is no evidence of any drug paraphernalia being located in his grandmother's house where he lived in Michigan—an unlikely circumstance if he was the intense addict as described during pretrial hearings. He worked at Menard's (a hardware store similar to Home Depot) and drove a forklift. He passed a drug test in January 2020 and was also able to pass his forklift certification—again, an unlikely occurrence if methamphetamine had indeed "hijacked" his brain.

Methamphetamine did not cause Defendant to produce child pornography. Insanity or some other mental illness similar did not cause Defendant to produce child pornography. The reality is that Defendant is sexually attracted to children. Defendant admitted repeatedly—to Audree, to Officer Crock, and to FBI Special Agent Joseph Paul, that he had previously had sex with children. He texted about child pornography and texted child pornography to Audree and discussed having sex with children and expressed a desire to have daughter so he could engage in incest.

1    It requires some significant mental gymnastics for insanity or

2  methamphetamine-induced hallucinations explain away the facts of this case. It

3  only requires basic common sense to realize that the Illuminati did not make

4  Defendant produce CSAM. Rather, he is sexually attracted to children and found a

5  weak individual who was willing to do whatever he wanted to appeal to that

6  attraction.

7              **D.    Specific sentencing factors**

8    This Court is of course familiar with the specific sentencing factors of 18

9  U.S.C. §3553(a): the nature and circumstances of the offense and characteristics of

10 the defendant; the need for the sentence imposed to reflect the seriousness of the

11 offense and the need for just punishment; the need for adequate deterrence;

12 protection of society; and the need for the sentencing to address defendant's needs.

13    The facts above speak for themselves and depict the need for a 50 year

14 sentence. The facts are horrific. Defendant's conduct and manipulation and level of

15 cruelty and casualness toward his horrific crimes demands decades in prison.

16 Society's disapproval toward crimes in general, but particularly toward the

17 memorialization of the rape of a child, shows that a maximum sentence is needed.

18 Defendant's depravity and aggression in pursuing the rape of a child, as shown in

19 the messaging introduced at trial, depicts an individual who is not in need of

20 treatment or monitoring. He needs to be removed from society so no further similar

21 conduct occurs.

United States Sentencing Memorandum - 16

1

### E.     Similar cases dictate the 50 year result is appropriate.

2       There are few cases on par with this one. That said, this district, relatively

3   recently saw the case of United States v.  Mikhail Yuriy Ageyev, a 34 year old

4   Defendant (at the time of sentencing) who pled guilty just days before his jury trial

5   was to commence (the juror questionnaires had returned, but unlike the instant

6   case, no jury was seated and no evidence had yet been taken). See  Case No. 2:18-

7   CR-00031-WFN-1; Judgement entered on January 28, 2020 (ECF No. 222).

8   Ageyev pled guilty to conspiracy to produce child pornography, production of

9   child pornography, and possession of child pornography.  District Judge William

10  Nielsoen sentenced Ageyev to 50 years in prison with a lifetime of supervised

11  release.

12      In that case too, the Ageyev obtained access to the child victim by

13  developing a romantic relationship with the child's mother.  In that case too, the

14  child was only two years old at the time of the victimization.  In that case too,

15  Ageyev "groomed" the mother into the exploitive behavior by showing her child

16  pornography.  In that case too Ageyev spoke extensively to the mother of the child

17  about the children they would have and Ageyev's plans to have sex with the

18  children they would have in the future.  In that case, approximately eleven

19  depictions of sexual abuse on the child were captured by electronic devices—

20  approximately eleven depictions were produced.  In the instant case there were

21  approximately six videos—approximately three videos involving Minor 1 predated

United States Sentencing Memorandum - 17

1  the subsequent three demanded by Defendant Solis of the co-defendant perform

2  oral sex on her child.

3      Ageyev too was off of the Sentencing Guidelines chart and had to be

4  reduced to a 43 by operation of the extent of the guidelines and then capped at the

5  maximum statutory sentence.  There was also a difference in that Ageyev had no

6  criminal history whereas Defendant Solis had committed a bank robbery after he

7  committed the child exploitation offense.  If there is a significant difference

8  between Ageyev and Solis, it is that Ageyev accepted responsibility before a jury

9  was seated and made to ingest the filth of the hundreds of disturbing text messages

10  that were read in the instant case prior to Defendant's plea on day two of trial.

11          **F.    Audree Pederson's sentence**

12      Co-defendant Audree Pederson received a sentence of 12 years and a

13  lifetime of supervision for her role in this offense. This sentence was pursuant to a

14  Fed. R. Crim. P. 11(c)(1)(C) agreement entered into by the parties and accepted by

15  Judge Rosanna Peterson.

16      Although Audree pled to similar charges, her conduct and her culpability

17  could not be more different. To be sure, she was the one who physically abused the

18  victim. She did so solely at the demand of Defendant and put her desire for a

19  boyfriend above the love of her son. Her disgusting actions are almost impossible

20  to explain. Audree was hundreds of miles away from Defendant when he

21  threatened her and she could have and should have simply told him "no" and

United States Sentencing Memorandum - 18

moved on with her life. But, she chose to abuse her son rather than face Defendant's anger.

As the United States prepared for trial and read thousands upon thousands of messages between the two, and talked with Audree for hours, and watched hours of Defendant's interviews, and examined every aspect of Defendant's life compared with Audree's life, the differences between the two became clear. Audree was weak and exhibited every classic symptom of a woman unable to take a stand against a threat that seems obvious to outsiders. She immediately regretted what she had done and took full responsibility. Over time and after removal from Defendant's influence, she came to realize the gravity of her actions. She was prepared to fully explain and accept what she did by testifying at trial. She expressed profound grief and regret for her choices, and even today cannot fully explain how Defendant came to have such an incredible hold on her life. Twelve years in prison for her adequately meets the goals of sentencing and justice because of who Audree is—a person who, although not a meeting the legal definition of a victim as defined by the United States Code, is a victim of Defendant by every other measure.

Audree has lost her child, her family, and much of her future. Those losses are due to her own choices and actions, but they are also due to Defendant. And that devastating consequence of loss of a child is one Defendant will not suffer.

United States Sentencing Memorandum - 19

Defendant is in many ways the exact oppose of Audree. He failed to take any real accountability until the second day of trial, and has even sought to withdraw his guilty plea. In fact, at the motion hearing to withdraw his guilty plea held on April 30, 2025, he stated he still maintains his innocence. He has consistently tried to manipulate the facts and twist his own words to avoid accountability. He is arrogant and continues to argue, as evidenced by opening statement at trial, that Audree was the real problem. He was the leader and instigator from the beginning of every crime he committed with Audree. He has never acknowledged the victim in this case or what effect his actions had on that child. He has never expressed regret for what he did, only the consequences he faces. He led the conversation surrounding child abuse and pornography, and while Audree agreed and went along with his tendencies, there is no indication she would have engaged in any criminal act toward a child but for Defendant's influence. In Defendant's own words regarding the 2-year-old child being sexually abused, "it's not that big a deal" and "everyone is happy and no one was hurt".

## CONCLUSION

The United States is requesting a very lengthy sentence for Defendant. He is an arrogant predator who preys on the most vulnerable in society and who is unwilling or unable to control himself and seems to have zero thought of

///

///

United States Sentencing Memorandum - 20

1  consequences or the effect of his actions on others. He has earned nothing less than

2  the 50-year statutory maximum.

3        Respectfully submitted April 30, 2025.

4
5                                        Richard R. Barker
                                         Acting United States Attorney

6                                        *s/ Rebecca R. Perez*
                                         Rebecca R. Perez
7                                        Assistant United States Attorney

8                                        *s/ Alison L. Gregoire*
                                         Alison L. Gregoire
9                                        Assistant United States Attorney

10

11

12                          **CERTIFICATE OF SERVICE**

13        I hereby certify that on April 2, 2025, I electronically filed the foregoing

14  with the Clerk of the Court using the CM/ECF System, which in turn automatically

15  generated a Notice of Electronic Filing (NEF) to all parties in the case who are

16  registered users of the CM/ECF system.

17

18                                        *s/ Rebecca R. Perez*
                                         Rebecca R. Perez
19                                        Assistant United States Attorney

20

21